Ex. A – State Court Complaint

| STATE OF INDIANA | ) | IN THE HOWARD COUNTY _____ COURT |
|---|---|---|
| | ) SS. | |
| COUNTY OF HOWARD | ) | SITTING AT KOKOMO, INDIANA |

| | |
|---|---|
| DANIELLE CLARK, personal representative of the Estate of DE'RIELLE BRONSON, and DANIELLE CLARK AND DERRICK BRONSON, as parents of DE'RIELLE BRONSON,<br><br>  Plaintiffs,<br><br>        v.<br><br>THE BOPPY COMPANY, LLC, and ARTSANA U.S.A., INC. d/b/a CHICCO and ARTSANA S.P.A. d/b/a ARTSANA GROUP<br><br>  Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Cause No:<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

## PARTIES AND VENUE

1.      Plaintiff Danielle Clark, in her own right certain as personal representative of the Estate of De'Rielle Bronson and Derrick Bronson are adult citizens and residents of the State of Indiana and the City of Kokomo, residing at 2001 N. Bell St., Kokomo, Indiana 46091.

2.      Plaintiffs' decedent, De'Rielle Bronson, died intestate on October 3, 2020.

3.      Plaintiffs' decedent, De'Rielle Bronson, is survived by her parents, Plaintiffs Danielle Clark and Derrick Bronson.

4.      Plaintiff Danielle Clark is the duly appointed personal representative of the Estate of De'Rielle Bronson, having been appointed on September 22, 2022, by the Howard Superior Court.

5.      At all relevant times hereto, Defendant, The Boppy Company, LLC, was a corporation and/or other jural entity duly incorporated, organized and operating under the laws of

the State of Colorado, with a principal place of business at 350 Indiana St, Suite 800, Golden, CO 80401.

6.    At all relevant times hereto, Defendant, Artsana, U.S.A., Inc. d/b/a Chicco, was a corporation and/or other jural entity duly incorporated, organized and operating under the laws of the State of New Jersey, with a principal place of business at 1826 William Penn Way, Lancaster, PA 17601.

7.    At all relevant times hereto, Defendant, Artsana S.p.A. d/b/a Artsana Group, was a corporation and/or other jural entity duly incorporated, organized and operating under the laws of Italy, with a principal place of business at Via Saldarini Catelli 1 22070 Grandate (CO), Italy.

8.    At all relevant times, Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, were the employees, agents, brokers, servants, alter egos and/or instrumentalities of one another and acted and/or failed to act through their employees, agents, brokers, servants, alter egos and/or instrumentalities, each and all of whom were acting within the scope of their authority, relating to the manufacture, design, marketing, and/or sale of a product known as the Boppy Original Newborn Lounger ("Boppy Lounger" and/or "product"), which was sold under a variety of names. The identities of these employees, agents, brokers, servants, alter egos and/or instrumentalities, are known to Defendants herein and currently unknown to Plaintiff, and include personnel responsiblefor the manufacture, design, and/or sale of the Boppy Loungers.

9.    At all relevant times, any other agents of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, who were involvedin the manufacture, design, and/or sale of the Boppy Loungers, were employees, servants, and/or authorized, actual, and/or ostensible agents of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, while acting within the scope of

2

their employment, master- servant, and/or agency relationship with Defendants, The Boppy Company, LLC, Artsana, U.S.A.,Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, while manufacturing, designing, marketing, and/or selling the Boppy Loungers, and while under the oversight, direction, supervision, control, and/or right of control of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group.

10.     The negligence of all Defendants, jointly and severally, in the manufacturing, marketing, designing, and/or selling of the defective Boppy Loungers, as set forth below, caused, and/or increased the risk of harm to Plaintiffs.

11.     Plaintiff's injuries and damages were the direct result of the negligence and carelessness of all Defendants, and/or their agents, servants and/or employees who were involved in the manufacturing, designing, marketing, and/or selling of the defective Boppy Loungers, and were due in no manner, whatsoever, to the failure to act on the part of Plaintiff, or any person other than the Defendants and/or their agents, servants, and/or employees.

12.     Venue is proper in this county in that the incident occurred in Kokomo, Indiana.

**OPERATIVE FACTS**

13.     Plaintiffs incorporate the above paragraphs as set forth at length herein.

14.     In 2020, Plaintiff Danielle Clark was given a Boppy Lounger (the "subject Boppy Lounger") as a baby gift.

15.     The Boppy Loungers, including the subject Boppy Lounger, are padded pillow "loungers" for infants.

16.     The Boppy Loungers, including the subject Boppy Lounger, are designed, marketed, sold, and manufactured by the Defendants.

17.     Due to the defective and unreasonably dangerous design of the Boppy Loungers,

including the subject Boppy Lounger, children placed in the loungers are at an increased risk of asphyxiation, hypoxia, anoxia, suffocation, airway obstruction and death due to the positions, angles, and padding of the defectively designed Boppy Loungers, including the subject Boppy Lounger.

18.     The Defendants marketed, advertised, and sold the Boppy Loungers, including the subject Boppy Lounger, as a product that infants could be placed in safely when the Defendants knew or should have known that placing infants in the Boppy Lounger could cause infants to suffer catastrophic injuries and death.

19.     Before and during their sale and marketing of the Boppy Lounger, the Defendants knew or should have known that the defective and unreasonably dangerous design of the Boppy Lounger could cause infants to asphyxiate because of the padding, angles, and positions of the Boppy Lounger; cause infants' airways to be blocked; cause infants to be lying at a dangerous angle in padded pillow; cause infants to assume positions that increase the risk of suffocation, hypoxia, anoxia, asphyxiation, and death; and, cause infants to become stuck in positions in which they were unable to breathe.

20.     On September 23, 2021, the Boppy Loungers, including the subject Boppy Lounger, were recalled because infants could suffocate if they rolled, moved, or were placed on the lounger in a position that obstructs breathing, or rolled off the lounger onto an external surface, such as an adult pillow or soft bedding that obstructs breathing.  At the time of the recall there had been eight infant deaths reportedly caused by the hazards presented by the Boppy Lounger.

21.     Before the Boppy Loungers, including the subject Boppy Lounger, were recalled  in September of 2021, the Defendants knew or should have known that the design, shape, and makeup of the Boppy Loungers, including the subject Boppy Lounger, caused, and increased the risk of causing, permanent and catastrophic injuries to the infants being placed in the Boppy Loungers,

including the subject Boppy Lounger. Said injuries include suffocation, asphyxiation, hypoxia, anoxia, Sudden Infant Death Syndrome ("SIDS") and death.

22.    Despite knowing that the design, shape, and makeup of the Boppy Loungers, including the subject Boppy Lounger, caused, and increased the risk of causing permanent and catastrophic injuries and death, the Defendants continued to market, sell, advertise, and tout the Boppy Loungers as safe products.

23.    Despite knowing that the design, shape, and makeup of the Boppy Loungers, including the subject Boppy Lounger, caused, and increased the risk of causing permanent and catastrophic injuries and death, the Defendants knowingly, purposely, and consciously, concealed their knowledge of these serious dangers associated with the Boppy Loungers, including the subject Boppy Lounger.

24.    On or about October 3, 2020, Plaintiff's decedent De'Rielle Bronson was placed in the subject Boppy Lounger.  Shortly thereafter, she was discovered unresponsive, taken to the hospital and pronounced dead.

25.    Due to the unreasonably dangerous and defective design of the subject Boppy Lounger, as described throughout this Complaint, Plaintiff's daughter, De'Rielle Bronson, was caused to asphyxiate and suffocate to death.

26.    Defendants' manual and website acknowledge the risk of severe injury of death to infants placed to lay in the Boppy Lounger through asphyxiation, but they proceeded to market and sell the Boppy Lounger anyway, and continued to do so even after learning of infant injuries and deaths caused by the product.

27.    Defendants' conduct shows they consciously understood the dangers of laying a baby in the product, including that it could lead to severe injury or death, and they nevertheless deliberately and intentionally proceeded to market and sell the product anyway, in disregard to the

rights and well-being of infants, including baby De'Rielle Bronson  This conduct was wanton, willful, reckless, and outrageous.

28.    As set forth more fully below, Defendants engaged in negligent, reckless, intentional, fraudulent, and/or outrageous conduct which caused, increased the risk of harm, and/or was a substantial contributing causal factor that resulted in Plaintiff's decedent suffering harm, death, and Plaintiff's damages, which include, but are not limited to, the following:

a)  Death;

b)  Asphyxiation;

c)  Suffocation;

d)  Sudden infant death syndrome ("SIDS");

e)  Cardiac arrest;

f)  Hemorrhage;

g)  Bleeding;

h)  Hypoxia;

i)  Brain damage;

j)  Brain injury;

k)  Pain and suffering;

l)  Loss of life's pleasures;

m) Mental anguish;

n)  Embarrassment;

o)  Disfigurement;

p)  Lost wages;

q)  Loss of earning capacity;

r)  Funeral expenses;

s)  All damages allowable under Indiana law, including damages recoverable under the Indiana wrongful death and survival acts.

## COUNT I – NEGLIGENCE

### Plaintiffs v. All Defendants

29.     Plaintiffs incorporate the above paragraphs as though set forth at length herein.

30.     Defendants were engaged in negligent, reckless, intentional, and/or outrageous conduct in the design, manufacture, sale and marketing of the Boppy Loungers, including the subject Boppy Lounger. The direct negligent, reckless, intentional, and/or outrageous conduct of these Defendants includes, but is not limited to, the following:

i.   Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device capable of causing infants who were placed in the Boppy Lounger device to asphyxiate and/or suffocate;

b.   Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device capable of causing infants who were placed in the Boppy Lounger device to die;

c.   Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device capable of causing infants who were placed in the Boppy Lounger device to suffer serious injuries, including brain damage;

d.   Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device at an angle that causes an infant's airwayto be obstructed or blocked;

7

e.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with a defective shape and design that causes an infant in the device to assume positions that lead to suffocation, asphyxiation, and/or death of the infant;

f.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger with an inadequate and/or unsafe restraint system that causes an infant in the device to suffocate and/or asphyxiate;

g.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with a defective shape and design that utilizes fabric, cloth, and/or material that is unreasonably dangerous and/or unsafe, in that the fabric, cloth, and/or material causes infants to suffocate or asphyxiate and/or fails to provide an infant the ability to adequately breathe when the infant's face comes into contact with the cloth, fabric, and/or material;

h.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device capable of causing infants who were placed in the Boppy Lounger device to suffer from injuries, deformities, and disfigurement, including, brain damage, developmental delays, and cognitive delays;

i.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device that contains parts and materials that cause an infant in the device to suffocate, asphyxiate, suffer injury, and/or die;

j.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with inadequate and/or defective safety devices and measures;

k.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device despite the fact that the defective and dangerous design, shape, and makeup of the device causes infants sleeping in it to suffocate, asphyxiate, sustain injury, and/or die;

l.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer asphyxiation;

m.  Misrepresenting to the public, customers, and owners of the Boppy Lounger, that the Boppy Original Newborn Lounger was safe for infants to lie in;

n.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer suffocation;

8

o.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer SIDS;

p.  Failing to perform adequate and proper testing and risk-hazard analysis on the Boppy Lounger device in order to ensure it was safe for use before selling it;

q.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer death;

r.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Newborn can cause an infant to suffer injuries;

s.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer brain damage and/or brain injury;

t.  Failing to timely recall the Boppy Lounger;

u.  Failure to warn that the Defendants knew that the Boppy Lounger device was associated with numerous injuries and death suffered by numerous infants;

v.  Failure to seek appropriate and adequate guidance, advice, and input from all applicable professionals, including medical doctors, engineers, and medical professionals, in the Defendants' pre-sale design and marketing of the Boppy Lounger device in order to ensure the design, makeup, shape, and/or angle of the Boppy Lounger device was safe and not defective prior to marketing and selling it;

w.  Continuing to market and sell the Boppy Lounger despite being notified by numerous individuals and organizations, including parents, customers, governmental agencies, medical doctors, and medical groups or organizations, that the Boppy Lounger device was unsafe, defective, and had caused deaths and injuries to numerous infants who were placed in the Boppy Lounger device;

x.  Continuing to market and sell the Boppy Lounger despite knowing that the defective design of the Boppy Lounger had caused or contributed to the deaths and injuries of numerous infants;

y.  Failing to issue post-sale warnings regarding the dangers and safety hazards associated with the Boppy Lounger; and

z.  Failing to issue adequate post-sale warnings regarding the dangers and safety hazards associated with the Boppy Lounger.

9

31.     As a direct and proximate result of the negligent, reckless, intentional, and/or outrageous conduct of Defendants, The Boppy Company, LLC, Artsana, U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group, Plaintiff suffered the damages set forth above.

32.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiff's damages set forth above.

## COUNT II – FRAUDULENT CONCEALMENT

### Plaintiffs v. All Defendants

33.     Plaintiffs incorporate the above paragraphs as though set forth at length herein.

34.     The Defendants each have a duty to consumers, users of the Boppy Lounger, and infants who are placed in the Boppy Lounger, to provide material facts regarding the safety hazards and dangers associated with the Boppy Lounger and its unsuitability for its intended use: for infants to lie in it.

35.     The Defendants, at all times, were aware and knew that the Boppy Lounger was unsafe for infants to sleep in, unsafe for infants to lie in, failed to conformto accepted safe sleep practices and standards for infants, and that the Boppy Lounger had caused the injuries and deaths of infants.

36.     Despite this knowledge, the Defendants, through their marketing materials, advertising, websites, and the packaging of the Boppy Lounger, consistently represented to the public, parents, owners of the Boppy Lounger, prospective customers, and users of the Boppy Lounger, throughout the period that the Defendants were selling the Boppy Lounger, that it was safe for infant use.

37.     In making these representations and statements, the Defendants each deliberately and knowingly concealed material facts relating to the safety of the Boppy Lounger and its

suitability for infants to lie in, and the facts that numerous infants had died or been injured as a result of the dangers of the Boppy Lounger. These concealed material facts included:

    a.   The Boppy Lounger was not safe for infants to lie in;

    b.   The Boppy Lounger's design, including its makeup and angle,was unsafe for children;

    c.   The Boppy Lounger's design, including its makeup and angle,could cause an infant to suffocate, asphyxiate, and/or die;

    d.   The Boppy Lounger's design, including its makeup and angle,could cause an infant to suffer hypoxic and/or anoxic brain damage or brain injury;

    e.   The Boppy Lounger had been linked to infant injuries and death;

38.    The Defendants deliberately concealed these material facts in their representations, intending that the consuming public would rely on them in purchasing and using the Boppy Lounger.

39.    The Defendants' concealment of these material facts was uniform toward the consuming public, including Plaintiffs. The Plaintiffs relied on the Defendants' representations that the Boppy Lounger was safe for infants to lie in, and the Plaintiffs would not have purchased, obtained, or used the Boppy Lounger had the Defendants not represented that the Boppy Lounger was a safe product for infants to lie in.

40.    As a direct and proximate result of the Defendants' deliberate concealment and silence regarding material facts of the dangers of the Boppy Lounger for infantuse, despite ample information at Defendants' disposal and the Defendants' knowledge to the contrary, numerous infants have been injured or killed.

41.    As a direct result of the Defendants' deliberate concealment and silence regarding the dangers of the Boppy Lounger, the Plaintiffs could not have and did not discover the truth

regarding the dangers of the Boppy Lounger or the role it played in decedent's death until at least September 23, 2021,when the Boppy Lounger was recalled.

42.     As a direct and proximate result of Defendants' deliberate concealment and silence regarding the dangers of the Boppy Lounger, Plaintiff suffered the damages set forth herein.

43.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiff's damages set forth above.

## COUNT III – STRICT LIABILITY – DEFECTIVE MANUFACTURE AND DESIGN

### Plaintiff v. All Defendants

44.     Plaintiff incorporates the above paragraphs as though set forth at length herein.

45.     At all relevant times hereto, the Boppy Lounger was defective as to design, manufacture, and warnings, causing the Boppy Lounger to be in a dangerous and defective condition that made it unsafe for its intended and reasonably foreseeableuses.

46.     Plaintiff and Plaintiff's decedent are in the class of persons that the Defendants should reasonably foresee as being subject to the harm caused by defectively designed Boppy Lounger, insofar as Plaintiff was the type of person for whom the Boppy Lounger was intended to be used by.

47.     Defendants, which are engaged in the business of selling the Boppy Newborn, manufactured and supplied the Boppy Lounger and placed them into the stream of commerce in a defective and unreasonably dangerous condition such thatthe foreseeable risks exceeded the benefits associated with the design and/or formulation of the products.

48.     The Boppy Lounger supplied to Plaintiff was defective in design and formulation and unreasonably dangerous when it left the hands of Defendants, the manufacturers and suppliers, and they reached the user and consumer of the products, without

substantial alteration in the condition in which they were sold.

49.    The Boppy Lounger was not reasonably fit, suitable or safe for its intended purposes in that it: (a) deviated from the design specification, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or (b) failed to contain adequate warnings or instructions, or (c) was designed in a defective manner.

50.    By reason of their conduct in designing, manufacturing, marketing, and distributing the defective Boppy Lounger device, Defendants are strictly liable for the injuries and damages sustained by Plaintiff as set forth above.

51.    The defective and unreasonably dangerous conditions of the Boppy Lounger, for which Defendants are strictly liable pursuant to the Indiana Products Liability Act, Indiana Code § 34-20-1 et.seq., include, but are not limited to, the following:

  a.  The Boppy Lounger device was designed in a dangerous mannerwith a dangerous angle, makeup, and shape, that made it capable of causing infantswho were placed in the Boppy Lounger device to asphyxiate and/or suffocate;

  b.  The Boppy Lounger device was designed in a dangerous manner with a dangerous angle, makeup, and shape, that made it capable of causing infantswho were placed in the Boppy Lounger device to die;

  c.  The Boppy Lounger device was designed in a dangerous manner with a dangerous angle, makeup, and shape, that made it capable of causing infantswho were placed in the Boppy Lounger device to suffer seriousinjuries, including brain damage;

  d.  The Boppy Lounger device was designed in a dangerous manner with a dangerous angle, makeup, and shape, that made it capable of causing an infant's airway to be obstructed or blocked;

  e.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device at an angle that causes an infant's airwayto be obstructed or blocked;

f.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with a defective shape and design that causes an infant in the device to assume positions that lead to suffocation, asphyxiation, and/or death of the infant;

g.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with an inadequate and/or unsafe restraint system that causes an infant in the device to suffocate and/or asphyxiate;

h.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device capable of causing infants who were placed in the Boppy Lounger device to suffer from injuries, including brain damage, anoxia, hypoxia, developmental delays, cognitive delays,and death;

i.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device that contains parts and materials that cause an infant in the device to suffocate, asphyxiate, suffer injury, and/or die;

j.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with inadequate and/or defective safety devices and measures;

k.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device to be used for infants despite the fact thatthe defective and dangerous design, shape, and makeup of the device causes infantssleeping in it to suffocate, asphyxiate, sustain injury, and/or die;

l.  Failing to warn that the design, makeup, shape, and/or angle of the Boppy Newborn can cause an infant to suffer suffocation, brain injury, brain death, asphyxiation, SIDS, injury, and/or die;

m.  Failing to warn that the Boppy Lounger was not safe for infant use;

n.  Failing to warn that the Boppy Lounger should not be used for infants to lie in;

o.  Failing to warn that the Defendants knew that the Boppy Lounger was associated with numerous injuries and death suffered by numerous infants;

p.  Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with a defective shape and design that utilizes fabric, cloth, and/or material that is unreasonably dangerous and/or unsafe,in that the fabric, cloth, and/or material causes infants to suffocate or asphyxiate and/or fails to provide an infant the ability to adequately breathe when the infant'sface comes into

14

contact with the cloth, fabric, and/or material;

q.  Misrepresenting to the public, customers, and owners of the Boppy Newborn, that the Boppy Original Newborn Lounger was safe for infants to lie in;

r.  Failing to perform adequate and proper testing and risk-hazard analysis on the Boppy Lounger device in order to ensure it was safe for use before selling it;

s.  Failing to timely recall the Boppy Lounger;

t.  Failing to seek appropriate and adequate guidance, advice, and input from all applicable professionals, including medical doctors, engineers, and medical professionals, in the Defendants' pre-sale design and marketing of the Boppy Lounger device in order to ensure the design, makeup, shape, and/or angle of the Boppy Lounger device was safe and not defective prior to marketing and selling it;

u.  Failing to issue post-sale warnings regarding the dangers and safety hazards associated with the Boppy Lounger; and

v.  Failing to issue adequate post-sale warnings regarding the dangers and safety hazards associated with the Boppy Lounger.

52.   As a direct and proximate result of the defective and dangerous condition of the Boppy Lounger described above, Plaintiff suffered the damages set forth herein.

53.   The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiff's damages set forth above.

## COUNT IV – STRICT LIABILITY – FAILURE TO WARN

### Plaintiff v. All Defendants

54.   Plaintiff incorporates the above paragraphs as though set forth at length herein.

55.   At all relevant times hereto, Defendants failed to warn and instruct Plaintiffs as to the risks and benefits of the Boppy Lounger, including that the design, makeup, shape, and/or angle of Boppy Lounger can cause an infant to suffer suffocation, brain injury, brain death, asphyxiation, SIDS, injury, and/or die properly and adequately.

15

56.     At all relevant times hereto, Defendants failed to warn and instruct Plaintiffs that the Boppy Lounger was not safe for infant use.

57.     At all relevant times hereto, Defendants failed to warn Plaintiffs that the Boppy Lounger should not be used for infants to lie in.

58.     At all relevant times hereto, Defendants failed to warn Plaintiffs that the Defendants knew that the Boppy Lounger was associated with numerous injuries and death suffered by numerous infants.

59.     At all relevant times hereto, Defendants failed to issue post-sale warnings regarding the dangers and safety hazards associated with the Boppy Lounger.

60.     At all relevant times hereto, Defendants failed to issue adequate post-sale warnings regarding the dangers and safety hazards associated with the Boppy Lounger.

61.     As a direct and proximate result of Defendants' failure to warn Plaintiff of the above-described dangers of the Boppy Lounger, Plaintiff suffered the damages set forth herein.

62.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiff's damages set forth above.

## COUNT V – NEGLIGENT MISREPRESENTATION

### Plaintiff v. All Defendants

63.     Plaintiff incorporates the above paragraphs as though set forth at length herein.

64.     Defendants have a duty to accurately and truthfully represent to consumers, users of the Boppy Lounger, and infants who are placed in the Boppy Lounger, that the Boppy Lounger was safe for infant use.

65.     The representations made by Defendants, in fact, were false.

66.     Defendants failed to exercise ordinary care in the representations concerning the Boppy Lounger while they were involved in the manufacture, sale, marketing,advertising, and distribution in interstate commerce, because Defendants negligently misrepresented the Boppy Lounger's high risk of unreasonable and dangeroushazards.

67.     Defendants breached their duty in representing that the Boppy Lounger was safe for infant use and that it did not pose a risk of infant death or serious injury.

68.     As a foreseeable, direct and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew and had reason to know that the Boppy Lounger was not safe for infant use, that it lacked adequate and accurate warnings, and that it created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of serious injury or death, including suffocation, asphyxiation, hypoxia, anoxia, Sudden Infant Death Syndrome ("SIDS") and death, which are permanent and lasting in nature.

69.   As a direct and proximate result of Defendants' negligent misrepresentation regarding the dangers of the Boppy Lounger, Plaintiff suffered the damages set forth herein.

## COUNT VI – COMMON LAW FRAUD

### Plaintiff v. All Defendants

70.     Plaintiff incorporates the above paragraphs as though set forth at length herein.

71.     As alleged throughout this Complaint, the Defendants, through their marketing materials, targeted advertising, websites, and the packaging of the Boppy Lounger, consistently, falsely, and fraudulently represented to the public throughout the period they were selling the Boppy Lounger that the Boppy Loungerwas safe for infant use.

72.     The Defendants made numerous representations knowing that they were false or with reckless indifference to the truth, including without limitation:

17

a.  Marketing, advertising, and labeling the Boppy Lounger product as safe for infants;

b.  Marketing, advertising, and labeling the Boppy Lounger product as safe for infants to lie in;

c.  Marketing, advertising, and labeling the Boppy Lounger as a product that was safe from the point of birth of the child until the child is able to roll over or weighs in excess of 16 pounds;

d.  Marketing, advertising, and labeling the Boppy Lounger product as safe for up to a 16 pound weight limit;

e.  Marketing, advertising, and labeling the Boppy Lounger product as having a safe and a "recessed bottom for baby's comfort."

73.    Defendants, through their marketing materials, targeted advertising, websites, and the packaging of the Boppy Lounger, consistently and falsely omitted material facts and information from the public, customers, purchasers, parents, and owners of the Boppy Lounger, throughout the period that the Defendants were selling the Boppy Lounger. The Defendants made these material omissions and false statements knowing that the information presented was incomplete, untrue, and with reckless indifference to the truth. These material omissions include, but are not limited to, the Defendants' failures to inform buyers and users of the Boppy Lounger that:

a.  The Boppy Lounger was not safe for infants to lie in;

b.  The Boppy Lounger's design, including its makeup and angle, was unsafe for children;

c.  The Boppy Lounger's design, including its makeup and angle, could cause an infant to suffocate, asphyxiate, and/or die;

d.  The Boppy Lounger's design, including its makeup and angle, could cause an infant to suffer hypoxic and/or anoxic brain damage or brain injury;

e.  The Boppy Lounger had been linked to infant injuries and death;

74.    The Defendants made these false statements and material omissions intending that

the consuming public and users of the Boppy Lounger would rely on them in purchasing or using the Boppy Lounger product.

75.     The Defendants were under a duty to disclose to Plaintiffs and consumers the defective nature of the Boppy Lounger, including the risks of infant injury and death.

76.     Defendants' concealment and omissions of material facts concerning the safety of the Boppy Lounger were made purposefully, willfully, wantonly, and/orrecklessly to mislead Plaintiff and consumers to induce them to purchase and/or use the Boppy Lounger as well as to mislead them into reliance upon and cause them to use the Boppy Lounger.

77.     At the time these representations were made by the Defendants and at the time Plaintiff used the Boppy Lounger, Plaintiff was unaware of the falsehood of these representations, and reasonably believed them to be true.

78.     The Defendants knew and had reason to know that the Boppy Lounger could and would cause severe and grievous personal injuries and death to infants placedin the product, and that the Boppy Lounger was inherently dangerous in a manner that exceeded any purported benefit.

79.     These false statements and material omissions were made uniformly to the consuming public, parents, owners of the Boppy Lounger, and prospective customers. These individuals, including the Plaintiff, reasonably relied on the Defendants'misrepresentations and material omissions regarding the Boppy Lounger and would  not  have  purchased,  obtained,  or used  a Boppy  Lounger  had the Defendants not represent that the Boppy Lounger was a safe product for infants to use.

80.     Defendants knew or had reason to know that Plaintiff and consumers had no way to determine the truth behind the Defendants' concealment and omissions, and that these included material omissions of facts surrounding the use of the Boppy Lounger, as described in detail herein.

19

81.     Plaintiff did not discover the true facts about the dangers of the Boppy Lounger, nor did Plaintiff discover the false representations of Defendants, nor would Plaintiff with reasonable diligence have discovered the true facts about the Defendants' misrepresentations at the time when Plaintiff used the Boppy Lounger.

82.     The Defendants' wrongful conduct constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and/or purposefully on Plaintiff.

83.     As a direct and proximate result of Defendants' fraud, Plaintiff suffered the damages set forth herein.

84.     The aforementioned conduct of Defendants caused, increased the risk of harm of, and/or was a substantial causal factor of, Plaintiff's damages set forth above.

## COUNT VII – GROSS NEGLIGENCE

### Plaintiff v. All Defendants

85.     Plaintiff incorporates the above paragraphs as though set forth at length herein.

86.     The wrongs done by the Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiffs, for which the law would allow, and which Plaintiff will seek at the appropriate time under governing law for the imposition of exemplary damages, in that Defendants' conduct was specifically intended to cause substantial injury to Plaintiff; or, when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included material representations that were false, with Defendants knowing that they were false or with reckless disregard as to the truth and as a positive assertion, with the intent that the

representation is acted on by Plaintiff.

87.     Plaintiff relied on the representations of Defendants and suffered injury as a proximate result of this reliance.

88.     Plaintiff therefore will seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

89.     Plaintiff alleges that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiff. In that regard, Plaintiff will seek exemplary damages in an amount that would punish Defendants for their conduct and which would deter other manufacturer from engaging in such misconduct in the future.

## **DAMAGES**

90.     Plaintiff is entitled to recover the following wrongful death damages that they are entitled to recover against the named Defendants pursuant to Indiana Code § 34-23-2-1: including:

    a.   loss of love and affection (past, present and future);

    b.   mental pain, anguish and distress (past, present and future);

    c.   loss of companionship, solace and society (past, present and future);

    d.   funeral expenses;

    e.   loss of consortium;

    f.   loss of support; and

    g.   lost earning capacity (past, present and future).

91.     Plaintiff is entitled to recover the following survival  damages against the named Defendants pursuant to Indiana Code § 34-9-3, including;

    a.   pre-death pain and suffering;

    b.   pre-death mental pain, anguish and suffering;

    c.   loss of quality and enjoyment of life;

    d.   medical expenses; and

    e.   lost earnings in the past, present and future.

92.    Plaintiff prays for a trial by jury.

**WHEREFORE,** Plaintiffs Danielle Clark and Derrick Bronson, individually and as husband and wife demands judgment against the Defendants, The Boppy Company LLC, Artsana USA Inc., d/b/a CHICCO, Artsana S.p.A., Artsana Group and each of them, for such damages as are reasonable in the premises and for all other just and proper relief in the premises

Respectfully submitted:

SCHAFER & SCHAFER, LLP

*/s/Todd S. Schafer*
Attorney for Plaintiffs
3820 E US 30
MERRILLVILLE, IN  46410
todd@schafer.legal

### JURY DEMAND

Come now the plaintiffs, by counsel, and demand a trial by jury on issues triable by a jury.

Respectfully submitted,

SCHAFER & SCHAFER, LLP
ATTORNEYS AT LAW

BY:   */s/Todd S. Schafer*
       TODD S. SCHAFER